Let's let everyone get settled. There's plenty of time. That's fine. Take your time. Okay. Good morning. Good afternoon, I guess it is. It's been a long day. My name is Dornel Bloodworth. I'm a police court. I'm here appearing for Jung LLC. Jung LLC is the owner of the building that we're in right now. It is the subject of the builder's risk insurance coverage that's at issue in this case. We're presenting the entire argument for all of the appellants, including McDonald, the general contractor, and BMCC and All Star who were subcontractors and who are also, all of them are plaintiffs. I'm here to argue my partner, Jim Garner, was planning to be here and he had a family medical emergency a few days ago that resulted in him not being able to come, so I appreciate the ability to appear here before you. The district court was faced with cross motions for summary judgment regarding the applicable deductible and the insurance policy at issue. The judge granted summary judgment to the insurers, finding that the deductible was $3.4 million approximately. Jung asked that this honorable court reverse that finding and finds that the deductible is $500,000. We're here on summary judgment review, so it's de novo review. The deductible to be charged under the policy wording is 5% of the total insured value at risk as respects flood. The insurance policy has a limit, whether it's a sublimit or a special limit. I think that's a semantic distinction. There's a particular limit for flood coverage and that's $10 million. We submit that either the insurance policy deductible provision is clear and unambiguous given that it includes wording specifically stating as respects flood or that it's ambiguous with more than one reasonable interpretation, in which instance there should also be a finding in favor of the insurer. So what does it mean, the $500,000 minimum deductible as respects flood? What meaning does that word minimum impart here? Well, the minimum deductible is applicable regardless of what the sublimit is. If, for example, Jung and McDonnell Group had decided that they wanted to buy $20 million worth of flood insurance or had decided they wanted to buy $5 million, you'd still have the $500,000 as a minimum. That's not inconsistent with the position that it is 5% of the $10 million sublimit. They just reached the same It's a coincidental matter. But here the insurers have not been able to explain a number of things and first is notably that there are two different deductible provisions in this policy. There's one for flood, well there are more than two, but there are two different ones for flood and for windstorm, for example. They have almost identical wording. It's undisputed that the total insured value at risk for windstorm is the entire value under the policy because there is no special limit for windstorm. It's subject to the whole value, which started out as $86 million and then increased as the value of the project increased. Why is that? That's because the entire building is at risk for windstorm. The limit for coverage for the whole building flood. No one needs $80 million of flood coverage for a multi-story building located on Canal Street in New Orleans because the lower floors are the only thing that is at risk. If the deductible was to be calculated based upon the entire value insured for the project, regardless of the lower limit on flood, it wouldn't make any sense to have two separate deductible provisions for flood and windstorm. You could have one provision that said that it was for both. I'd like to turn to the wording of the deductible provision itself for flood because it limits coverage and it should be construed narrowly in favor of the insured. It says 5% of total insured values at risk at the time and place of loss subject to $500,000 minimum deduction as respects flood. There are several important points about this wording. The first is that the phrase total insured values at risk at time and place of loss is not defined. The insurers here, Lexington and Starr, could have placed a definition in the policy to explain what they meant by that wording if it was to have other than ordinary meaning. Is that what makes it ambiguous? What makes it ambiguous? I'm not saying that that wording is ambiguous. I'm saying that if, in fact, there are two interpretations of the clause as a whole that are reasonable, then that provision is ambiguous. I think it's not ambiguous and that it's clear that the supplement should be the amount that you do the math from. But if the court finds, as the Terra Audis court found, that there are two reasonable interpretations of this clause, that's what makes it ambiguous. The second important thing about the wording is that it says total insured ED values, not insurable values. The insured value for flood is $10 million. The limit of insurance for flood is $10 million, period. That a larger amount was insurable is of no moment. Then, of course, the third thing in that clause that's very important is the ending clause as respects flood. The inclusion of this clause makes clear that the total insured value is limited to the insured value as respects flood. Now, there is no Louisiana Supreme Court case or case from this court construing a provision that's identical or even close to this deductible provision. The one case that really construed almost perfectly identical wording was the Terra Audis case out of the Southern District of Florida. A lot of these deductible cases come out of the Southern District of Florida because of the hurricane risk down there. It was a windstorm clause there. It wasn't a flood clause. But other than the word flood and windstorm being different and the numbers being different, the words are pretty much the same as what we have here. There, the policy had a $10 million sublimit for damaged cost by windstorm. The deductible was 5% of total insured values at risk at the time and place of loss subject to a minimum deduction of $250,000 as respects the peril of windstorm. That's pretty much exactly our wording except for windstorm and flood. The insurer argued that total insured value was the value of the entire project, which was The insurer argued that the total insured value at risk at the time and place of loss was the $10 million sublimit for windstorm. The court did a really in-depth analysis of the issue and noted that deductibles should be calculated on the basis of covered losses, not losses that were not covered by the policy. The deductible needed to be based on the loss that was insured. The Tara Addy Court looked to Merriam-Webster's dictionary for what a deductible is, which is the right thing to do. I mean, we give words in insurance policies their ordinary meaning unless there's a special definition or it's a technical term that has a special meaning. And Merriam-Webster says that a deductible is a clause in an insurance policy that relieves the insurer of responsibility for an initial specified loss of the kind insured against. The Tara Addy Court found this to be significant and said a deductible loses its meaning if it is to apply to loss that is not covered by the policy. And this court has made similar statements. In the penthouse owners versus certain underwriters case, which really doesn't involve similar wording, but it did talk about deductibles, this court noted that a deductible has the purpose, quote, to shift some of the insurer's risk, open parens, that is covered risk, closed parens, to the insurer. Here, that's what we're suggesting is that the covered risk is the $10 million flood sublimate. The Tara Addy Court found that it was reasonable that the total insured values was modified by the phrase, as respects the peril of windstorm. And what the court did was ultimately find that both parties had presented reasonable interpretations of the wording and found for the insured for that reason, because there were two reasonable interpretations. Another case that has pretty similar wording is another district court case. This one is called Landscapes Unlimited versus Lexington. It's cited in McDonald's principal brief. It's a district court of Nebraska case from 2006. There, it was a flood provision that had a sublimate of $500,000, and the deductible clause read, 5% of the values at risk for the peril of flood, open parens, minimum of $25,000, closed parens. The policy didn't contain a definition of the values at risk, and the court said that because the wording could be construed to mean the values at risk for the insurer, which would be the $500 flood sublimate, the policy was subject to reasonable interpretations, and the court applied the deductible to the sublimate, not the value of the property insured, which resulted in a $25,000 deductible. And the court was not troubled at all and discussed the fact that the deductible would always be $25,000, the minimum and the maximum. That's not inconsistent. A lot of times you have one figure in a policy for a deductible. The other thing the court in the Landscapes Unlimited case found pertinent was that a reasonable person in the position of the insured would believe that the values at risk were the sublimate, because otherwise there would have been a $375,000 deductible applicable to $500,000 sublimate for flood. Similar circumstance here, except you add some zeros. Under the insurer's argument, we have a almost $3.5 million sublimate for $10 million of coverage. That just doesn't make sense. I would submit that the cases relied upon by Starr and Lexington do not apply and are distinguishable because of policy language differences. I won't go through all of them, but the primary case they seem to rely upon is the Castle Oil case, which had a deductible provision with 2% of the total insurable values at risk per location subject to a minimum of $250,000. There are two things that are different in that case than here, and that's a Court of Appeal in New York case. The first is that it says insurable values. It doesn't say insured values. Here we have insured values. The insured value for flood is $10 million. Secondly, it did not have the clause as respects flood. The only other case I'd like to discuss quickly that has been relied upon is this Court's Saratoga Resources v. Lexington case. It was a per curiam. That case, although relied upon by the insurers, did not involve the issue of a sublimate for a particular peril at all. It was a situation where there were multiple buildings that were damaged by one storm, and the deductible had wording total insurable value. The insured was trying to use the value for each building, calculate it separately, have a bunch of mini-deductibles, and then rely upon a clause that said if there are multiple deductibles, you use the single largest one. The court said, no, you can't do that. It's one event when you have one storm. That's really not on all fours at all here. So, of course, as the appellant, it's your job to show us that Judge Guidry reversibly erred here. Can you pinpoint, in your view, the pivot point at which he misunderstood or misapplied the wrong law or misunderstood the contract? Where principally did he go wrong? Well, A, it's De Novo Review, but B, he went wrong in that he found what he considered one reasonable interpretation of the clause, and he didn't look at or analyze, at least not in the opinion, whether there was a second reasonable interpretation. Here, at the least, there are two reasonable interpretations, one in favor of this large $3.4 million deductible and one that it's a $500,000 deductible, and he didn't really discuss that issue at all, as respects flood wording and what it meant or the loss-insured wording and what the loss-insured was. I think that's really where he went wrong. And you've addressed my question. I appreciate that. And you've saved time for rebuttal. Thank you. Thank you. Mr. Warren? Your Honor, my colleague is delivering documents for the court, which have a one-page document we wanted to share with the court, if that's acceptable. Okay. May it please the court, I'm here on behalf of the appellees. There are two insurers here who have 50% interest in the same . . . they each have their own policies, but we refer to it in the singular because it's the same wording. The background here is that we're dealing with a builder's risk policy, and while I want to get into some of the things that counsel addressed in her argument specifically, I think it's worthwhile just to talk about what we're dealing with here. Builder's risk policies have a value that derives from the value of the project itself, and in this case, the builder's risk policy value was $86,083,000. That key valuation is tied to what is involved in the project, and at the time of this particular loss, the project was 80% complete, and there is no dispute about that. No one's arguing about that point, which means that the total insured values at the time of the loss was $869,506. Once again, no dispute. This terminology is clear throughout the policy, and the deductible provision plays off of it. I've asked the clerk to provide you with a copy of that, and this is from our record excerpts, tab 15, and it is the deductible provision itself, and this is page 6 of 30 in the policy. When counsel was describing this provision, what she said is that the flood deductible is 5% of the total insured values at risk as respects to flood or something like that, but what the entire provision says is it's 5% of the insured values at risk at the time and place of loss subject to a $500,000 minimum deduction as respects, and there's a repeat there, there's a mistake, as respects flood. Now, it's interesting to look at the other deductibles. This terminology, as respects different perils, appears throughout. For example, with respect to land movement, earthquake, whatever that refers to, that's not an issue here, but the deductible is $100,000, and it also says as respects land movement. All of these deductible provisions say that, and the as respects language is a labeling mechanism, and some of the cases we have cited actually have flood over here or windstorm, and then it has the deductible amount beside it. In this case, there is no labeling. The only way you know how these deductibles are to be applied is that language at the end of the line. It directs you to the peril, and some of the courts refer to these as peril deductibles in the sense that they apply to a specific type of peril, and the instructions in the first paragraph of the deductible are very important. They say, from the amount of each claim for insured loss or damage arising out of any one occurrence, there shall be deducted the applicable amount shown below, and then the liability of this company shall be only for the amount of such insured loss or damage in excess thereof, subject to the limit of liability, sublimits of liability, or annual aggregate limits of liability. In other words, the first thing you do is you apply the deductible to the loss. The next thing you do is you pay whatever is in excess of that subject to a sublimit. Now, the cases that we have cited to the court, in some cases the other side has cited them too, all of those cases, with only one exception that I'm aware of, essentially recognize that when this type of calculation is involved, that calculation goes to the insured or insurable values and not to some sublimit or limit of liability. Can we talk about that? So I'm looking at page 5251 of our record on appeal, and it's called a project extension endorsement. Right. And this looks like in 2017, the parties agreed for an additional premium of $172,000 some period of time, and to add $10 million of coverage from $76 some odd million to $86 million. Correct. What is the purpose of adding from changing from $76 to $86? Your Honor, this goes to the point I was making before. These builder's risk policies are tied to the value of the contract. So if the contract value goes up, in order to keep the project fully insured, you have to insure the entire project. And when you say it goes up, does that mean that they're doing additional renovations or it means appreciation? I mean, suppose this property was in Austin, Texas, where these things appreciate 100% year on year. It could be any of that. Okay. So suppose that in 2018, that I got another one of these project extension endorsements and it extended the total contract value of the insured project from $86 million and some would agree. No. No. I don't agree at all. In fact, that absurdity argument has been tried in several courts and we've cited those cases, and generally the courts leave that to contract. It's a matter of allocation of risk and paying for someone to take that risk. I'm sorry. The position is that the insured could come and pay some additional premium, presumably hundreds of thousands of dollars, to get additional coverage from the insurance company, of which 100% of it would be subsumed by the deductible. Well, the way it works is, according to the deductible, is that the deductible is applied and then any amount in excess is paid subject to the limits of insurance or sublimits. And one of the issues that is raised in the briefing on the other side is they talk about this deductible being 34% of the sublimit, but it's not, because the directions say you first assign the deductible and then subsequently you pay in excess of the deductible up to the sublimit. So the sublimit is not eroded, the sublimit is not eroded by the deductible. So, in my hypothetical about the 2018 extension, which I realize never happened, but just imagine it, they would pay first $10 million in the deductible and then you would pay in excess of that $0? Well, if the loss was below deductible, it would be $0. That's correct. And why is that? It's because of the wording of the contract. If you go back to our specific line of the deductible provision, the part that they tend to leave out is that we're talking about the insured values of risk at the time and place of the loss. And in this case, in some of these projects, there may be more than one place, there may be more than one building. But with respect to this, what that's telling you is as you look to the time of the loss, how complete is the project? In this case, the project was 80% complete, so the values at risk at that point would be 80%. And everybody agrees with that. But that language would have no meaning, it would be superfluous, if the position of the appellants was taken. Because all you would do is you'd multiply 5% times the sublimit. And that's not what this says. This says the values at risk at the time and place of the loss. And then there is the minimum language, which Your Honor asked about earlier. The minimum, under their theory, becomes the maximum. And here's the thing about it. If it's just a matter of a set amount, we know from looking at this policy that there's a way to do that. Look at the first line, 100,000. They just say it. If it was merely multiplying against the sublimit, then they would say it. And I know you wanted to ask another question. Before you go there, let me just say one other thing. Counsel just said something about if there was $20 million sublimit for flood. There's nothing in the record to support that that was ever an issue or that if it was $20 million that this deductible provision would be the same. All we have in front of us is this contract. And what it says is it has this deductible provision and it has a $10 million sublimit. And it was negotiated by the parties and purchased by the parties. There was a premium calculation. And it's clear and unambiguous what it says. Well, I mean, obviously the insurer wrote the contract, right? And the insurer wrote it. So it's a little bit difficult to say that, you know, it could have been written differently or that their reading renders something superfluous. They didn't write it, right? They agreed to it. Well, it's a little different than, say, a state farm policy where you're dealing with an ISO form. In this case, you have a broker involved who engages with insurers to purchase the insurance. And you're not working off the pre-printed form issue. But none of that was considered by the court below. The court below simply looked at the wording of the policy. Let me try to get at it this way. So if we can go back to the . . . this is, again, 5251, the project extension endorsement. I'm looking at this, and maybe there's something I'm missing. But I don't . . . it looks like what happened in 2017 is that the parties amended the total contract value, which in Appley's view is the thing that is the most important variable to determine the deductible, but didn't change the deductible clause. Am I understanding what happened? You just changed the one number, the total contract value. That's correct. Okay. So there's nothing in any of this that suggests that they're somehow inextricably linked as a bargaining agreement. In fact, you negotiated the total contract value separately at a different point in time, independent of the deductible clause. They are linked. And here's how they're linked. By the wording of the deductible provision, which says the value . . . the insurable values . . . total insurable values at the time and place of the loss. I understand. But there's nothing conceptually that would prohibit a second contract extension that changes the total contract value to $400 million, at which point your reading of the deductible clause means they pay you $20 million to get $10 million of coverage, right? They're out. They actually are negatively insured at that point. Well, if that happened, the math would be the math. In this situation, that didn't happen. They chose . . . the insurer chose to purchase the insurance as it was originally and they asked for . . . to pay additional premium dollar to expand the value of the project. This policy, all throughout it, is tied back to those values. Can I give you one example that would at least show you how this would work in a different way? I'm kind of cribbing from one of the courts that addressed this issue because we've got several district court opinions out of the Southern District. We've got an appellate division case out of New York here and all of them deal with the same thing. They analyzed this essentially, Your Honor, from the absurdity issue, is this absurd? In some of those cases, the insurer didn't get any money because of the size of the deductible. Same issue. The insurer is trying to change that wording by, in this case, literally omitting part of it in the briefing. If you look at the briefing, they leave out . . . in fact, on page five of their reply brief, and I'm talking about Jones' reply brief, they quote a decision of this court that came out in early 2020 which says you have to read every word of the policy. Then they quote this provision and they put an ellipse in to leave out that minimum language that we're talking about. Isn't it your position that your client doesn't owe any money? Isn't that your position? That's correct. Everybody in this case agrees that if the deductible provision is interpreted the way the court below you want it to be interpreted, that's what's going on in these cases that we cited as well. One of the courts says this, they say, you cannot interpret a deductible by the way it plays out in a particular situation. What you have to look at is how would it play out in a different situation? I'll give you one. There's a $14 million loss. If you subtract the deductible of $3,443,000 from $3,475,000, you would have a net loss of $10,556,525. The payment would be $10 million because the sublimit is 10. We can't judge a contractually agreed and clear and unambiguous deductible provision based on the way it comes out in a particular situation. I take the point that we're supposed to look at the text of it. Here's the thing I don't get. I'm looking at the handout you gave us. I have a different version of it, but it's the same text. These bolded all-caps words like land movement, flood, named windstorm, water damage, flood, et cetera, those are obviously super important words. We see a lot of insurance cases. We understand the significance of using these bolded words like that. You could have used the total amount that's 5% of the total contract value, bolded word, and then we wouldn't be here. We would know exactly what you meant. Or you could have said total contract value times the ratio of completion, really, because that's what it is. It's the 78 or 86 times 8.8, and then 5% of that again. That's an interesting point, Your Honor, but I will respectfully disagree. We would be here. The reason why we'd be here is that that's not what they're saying. They're not saying that the language is unclear as it relates to the total contract value. What they're saying is that there's a $10 million sublimit, so you have to multiply the percentage times that because that's all the coverage there is. Oh, sorry. I just meant your position. I don't think they'd be contesting it because they would agree with you that their deductible is 5% of the total contract value, I guess is what I was getting at. Well, but they don't disagree with that even. There's nothing in the language. What they're saying is that the court below's decision is wrong because the court should have looked at the sublimit first, and what we're saying to you is that the deductible provision says just the opposite, and that's the way the court interpreted it. I would ask you, when looking at this, to look back a few pages in the documents of liability and sublimits, and in there you'll see exactly the same kind of language, as respects, as respects, as respects, and the reason why I would submit is because that is a labeling mechanism so that you can tell what you're talking about because without it you couldn't. I'm getting close on time, so I wanted to make one point about the standard of review here. We realize this is de novo. We're prepared to talk to you about that, but we find it interesting that under the briefing from the other side, the ruling of the court below, which took on board all the Louisiana Code provisions relative to contract interpretation, actually read the briefs and ruled on it, gets less deference than the Terra Court from fourteen years ago in an unpublished opinion, and when the same court has three other decisions within about a five to ten year period that are contrary to that, and our only position on that is that while it certainly is fine to have a sublimit, it's not fine to have a sublimit. The question here is what does the contract say? I believe we get caught up in the all fours analysis. I would suggest that another way to look at it is if you look at the courts that have grappled with this issue. First, the courts routinely reject that. The second is the insured always says, I'm not getting paid, so therefore it's absurd, and the courts routinely reject that. In our view, and we respectfully submit that the decision below, while you don't have to defer to it, instead of my briefing or their briefing, look at how Judge Guidry briefed it. He analyzed this thing. He determined that it was clear and unambiguous, and when he did that, that meant that he had to read it, giving terms that are common meaning and affecting the purposes of the document, and he did that. He did that. He found that the document was clear and unambiguous, assigned the value, and we would respectfully submit that this court should do the same on a de novo review. I don't want to cut any questions off if there are any others. Thank you. Thank you for your time. Don't worry about it. Thank you. I think Judge Oldham hit on a key point, and that is, and it's all tied to something I talked about earlier, that a limit or sublimit, whatever you want to call it, for flood is often tied to what's really at risk of being damaged by flood. Here, we have an 18-story building that's, you know, you're not going to have $86 million worth of flood damage to an 18-story building, and that's why there's a sublimit. If the construction that's argued for here were carried to its logical result using the hypothetical of, we decided to make this a really fancy hotel, and we ended up increasing the policy value to $200 million. That means that you have, under their construction, $10 million worth of deductible for flood. Well, we got $10 million worth of flood insurance because we thought that's what the risk was, how much of the hotel was really likely to have flood damage. And that means that it is illusory at that point. The other point, I think, is that I think, Judge Oldham, you hit on what I was getting at and didn't explain very well in response to Judge Clement's question earlier about the fact that the wording in this clause isn't in bold caps. That means it's not a defined term. And as you pointed out, there was a defined term that could have been used that would have made it less ambiguous, and that's total contract value. We'd still have an issue with what do you do when they modify that with as respects flood, but if it was a defined term, certainly it would have been a lot clearer than it is right now today. And I think the last thing I'd like to point out, and this is in response to the suggestion that we're somehow dismissing what Judge Guidry did, I don't think that's the case. But we have a federal court judge in Florida who did a very in-depth analysis and considered all possible interpretations. We don't know if Judge Guidry did that because he didn't address it in his opinion. But we have a federal court judge in Florida finding that there's ambiguity. We have a federal court judge in Nebraska finding that there's ambiguity in pretty similar wording. And we have Judge Guidry finding that there's only one reasonable interpretation. To me, that means if we have three people, there are Article III judges who have a different interpretation of that. Doesn't that mean that this wording is subject to two reasonable interpretations? I circle back to that because all of these judges are presumably reasonable people, and I think they've done a lot of analysis. And if you have more than one interpretation, that situation is where you then decide the ambiguity is construed in favor of the insured. Thank you. What's the status of the hotel now? I'm sorry? What's the status of the Jung Hotel now? Is it open? I believe it is open. Mr. Yeager has a few hotels in town that aren't yet open, but Jung, he kept open, I think, throughout the pandemic, which is good. All right. Thank you. Your case is under submission, and the court is in recess until 10 o'clock tomorrow. Thank the court very much for having moral argument first, and we appreciate it.